# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L'OREAL USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 08-40064-FDS |
| | ) | |
| RG SHAKOUR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a breach of contract action arising out of a product distribution relationship. Plaintiff L'Oreal USA, Inc., is a manufacturer of cosmetics and other beauty products. Defendant RG Shakour, Inc., is a wholesale distributor of such products. Jurisdiction is based on diversity of citizenship.

The complaint alleges that Shakour wrongfully failed to pay for products it had purchased from L'Oreal and that it improperly held itself out as an authorized L'Oreal distributor after the parties' contractual relationship had ended. L'Oreal's complaint contains five counts: breach of contract (Count 1); breach of the implied covenant of good faith and fair dealing (Count 2); unjust enrichment (Count 3); violation of Mass. Gen. L. ch. 106, § 2-709 (Count 4); and violation of Mass. Gen. L. ch. 93A (Count 5).

L'Oreal has moved for summary judgment on its claims for breach of contract, unjust enrichment, and violation of Chapter 93A. For the reasons that follow, the motion will be denied.

### I.     Background

The facts are set forth in the light most favorable to defendant, the non-moving party.

### A.     The Contract

On January 1, 2003, L'Oreal USA, Inc., and RG Shakour, Inc., entered into a contract entitled "L'Oreal Professionnel Distribution Agreement." (*See* Doc. 29-1, at 19-29). Under the terms of the contract, Shakour was the authorized distributor of certain L'Oreal products throughout New England. (*Id.* at 19, ¶ 1). The contract was effective for a three-year period and provided that it would, absent authorized termination by either party, "expire [on] December 31, 2005." (*Id.* at 25, ¶ 17(a)). At the same time, the contract provided that it would

> renew automatically for additional two year terms provided (1) neither party elects not to renew and gives the other party notice of non renewal at least sixty (60) days before expiration of the term; and (ii) the renewal shall not be effective unless Distributor's Sales Commitments for the first year of the renewal term has [sic] been agreed by the parties.

(*Id.*). It appears undisputed that, pursuant to this provision, the contract automatically renewed for one two-year period. The term of the contract was thus extended through December 31, 2007.

Under the terms of the contract, L'Oreal invoiced Shakour with each shipment. (*See* Doc. 29-1, at 21, ¶ 5). If Shakour failed to pay those invoices when they were due, the contract called for a 1.5% monthly delinquency charge. (*Id.*). Moreover, it stated that Shakour's "failure to pay all amounts owed to L'Oreal in full when and as due shall constitute a breach." (*Id.*).

The contract further provided that should it terminate, "for whatever reason[,] . . . [Shakour] shall not thereafter represent or hold itself out as an authorized L'Oreal Professionnel

Distributor or engage in any practices which might make it appear that [Shakour] is still an authorized L'Oreal Professionnel Distributor." (*Id.* at 26, ¶ 18(a)(ii)).

The contract also contained the following integration clause:

This Agreement embodies the entire Agreement and understanding between the parties hereto and is intended as the complete and exclusive statement of the terms of the agreement between the parties superseding any prior agreements or understandings between the parties. [Shakour] acknowledges that L'Oreal [] has not made any representations to [Shakour] relating to the subject matter hereof other than those which are contained in this Agreement. Except as provided in this Agreement, no change in or addition to the terms and conditions contained herein shall be valid as between the parties hereto unless set forth in a writing which is signed by an authorized representative of both parties and which specifically states that it constitutes an amendment to this Agreement.

(*Id.* at 27, ¶ 21).

Finally, the contract included a choice of law provision, providing for New York law to govern its interpretation. (*Id.* at 28, ¶ 24 ("This Agreement shall be construed in accordance with and all disputes herein shall be governed by the internal laws of the State of New York without giving effect to New York's choice of laws provisions.")).

### B.     The Facts

As noted, the parties agree that the contract was extended through December 31, 2007. During the term of the contract, L'Oreal repeatedly pressured Shakour to purchase greater and greater quantities of L'Oreal products, often requiring Shakour to purchase more goods than it needed or could sell. (Doc. 35-2, at 13). L'Oreal representatives frequently contacted Shakour with requests to purchase additional products so that L'Oreal could meet its own quarterly or annual sales goals. (*Id.* at 19). To induce the purchase of additional products, L'Oreal repeatedly assured Shakour that it would repurchase the unsold inventory when and if their business

relationship ended. (*See, e.g.*, *id.* at 8, 12-15; Doc. 35-5, at 10-12).[1]  In reliance on these various conversations, as well as the parties' 52-year working relationship, Shakour understood that the contract had been orally modified and that L'Oreal would repurchase all of the unsold inventory when and if the business relationship was concluded. (Doc. 35-2, at 7).

Eventually, the parties' relationship did end.  On January 4, 2008, Shakour sent a letter to L'Oreal purporting to memorialize the expiration of the contract: "This confirms that we have, with great regrets and sadness, determined not to go forward with a new Distribution Agreement with L'Oreal." (Doc. 29-1, at 58).[2]  As of that date, Shakour had an outstanding balance with L'Oreal of $423,815, which included three purchases Shakour made in the weeks immediately preceding the letter. (*See* Doc. 29, Ex. E; Doc. 29-3, at 3).[3]  Despite repeated promises, however, L'Oreal did not repurchase the unsold inventory.

Although the parties' relationship had come to an end and Shakour was no longer an authorized distributor, it continued to sell L'Oreal products. (*See* Doc. 29-3, at 4).  Between December 2007 and May 2008 alone, Shakour sold approximately $350,000 worth of products, but did not use any of the income to retire the debt it owed to L'Oreal. (*Id.*).  Moreover, in aid of

---

[1] Shakour's statement of facts in support of its opposition includes several examples of conversations in which L'Oreal assured Shakour that it would be made "whole" if the parties' relationship ever ended. (*See* Def. Mem. at 4-6).  To take but one example, on May 13, 2004, Steven Hirschman of L'Oreal met with Jon Shakour in Westborough, Massachusetts, and informed him that he was receiving a lot of pressure from his superiors to increase Shakour's sales numbers. (Doc. 35-2, at 23-27).  Hirschman advised Jon Shakour to increase the sales numbers and inventory or the company would be forced to give up its exclusive rights to the L'Oreal lines. (*Id.*).  Hirschman nevertheless assured Jon Shakour that L'Oreal would repurchase any unsold products if the parties' relationship ended for any reason. (*Id.*).

[2] Shakour is apparently of the view that the contract "expired"; L'Oreal contends that Shakour "terminated" the contract. (*See* Doc. 29-3, at 6).  The dispute does not appear to be material.

[3] On December 13, 2007, Shakour placed an order for approximately $110,000 worth of L'Oreal products. (*See* Doc. 29, Ex. E).  On December 20, it placed another order for an additional $77,000 worth of products, and on December 29, it placed an order for approximately $165,000 worth of products. (*Id.*).

its continued sale of L'Oreal products, Shakour marketed the products with flyers that displayed L'Oreal's name and logo. (Doc. 29, Ex. B).

L'Oreal filed the present action against Shakour on April 9, 2008. The complaint alleges five counts: breach of contract (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), unjust enrichment (Count 3), violation of Mass. Gen. Laws ch. 106, § 2-709 (Count 4), and violation of Mass. Gen. Laws ch. 93A (Count 5). L'Oreal contends that as a result of Shakour's breach of contract it has suffered damages of approximately $550,955 (the $423,815 balance plus $127,140 in delinquency charges). Shakour answered the complaint and asserted six counterclaims: breach of contract, misrepresentation, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, violation of Chapter 93A, and misappropriation of trade secrets.

Currently pending before the Court is L'Oreal's motion for summary judgment on its claims for breach of contract and violation of Chapter 93A. In the alternative, L'Oreal seeks summary judgment on its claim for unjust enrichment.

## II.   Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this

determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). Where, as here, the moving party bears the burden of proof at trial, summary judgment is appropriate only if "no reasonable trier of fact could find other than for the" movant. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).

### III.   Analysis

#### A.   Breach of Contract

L'Oreal first seeks summary judgment on its breach of contract claim. It contends that Shakour breached the contract in two ways: (1) by failing to pay for all of the products it had purchased and (2) by improperly holding itself out as a L'Oreal distributor after the parties' relationship ended. In response, Shakour contends that the contract was orally modified by L'Oreal's repeated representations that it would repurchase the unsold inventory when the parties' relationship ended. Because L'Oreal failed to do so, Shakour contends that it was permitted both to sell the remaining inventory and to withhold payment from L'Oreal.

Under New York law, a plaintiff alleging breach of contract claim must demonstrate (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach. *Nat'l Market Share, Inc. v. Sterline Nat'l Bank*, 392 F.3d 500, 535 (2d Cir. 2004). Shakour does not dispute that the L'Oreal has established these elements.[4] Rather, its defense

---

[4] Shakour contends that the contract expired rather than terminated, but that point is not material as to the breach of contract claim. Shakour does not argue that the expiration (as opposed to termination) of the contract justifies its failure to pay or its holding itself out as an authorized distributor. Rather, it contends that L'Oreal

consists of a single contention: L'Oreal's repeated oral promises to repurchase the unsold inventory modified the contract and justifies its decision both to withhold payment from L'Oreal and to continue to sell L'Oreal's goods.

Under New York law,

> [a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

N.Y. Gen. Oblig. Law § 15-301(1). "Put otherwise, if the only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls." *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343 (N.Y. App. 1977). Here, the contract contains just such a provision, which states that

> [e]xcept as provided in this Agreement, no change in or addition to the terms and conditions contained herein shall be valid as between the parties hereto unless set forth in a writing which is signed by an authorized representative of both parties and which specifically states that it constitutes an amendment to this Agreement.

(Doc. 29-1, at 27, ¶ 21).

Like most legal rules, this one admits of exceptions. One is relevant here: "[W]hen one party has induced the other party to rely on an oral modification, the first party may be equitably estopped from invoking the requirement that any modification be in writing." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990). Here, a reasonable jury could conclude that L'Oreal should be equitably estopped denying the effect of its oral representations. According to Shakour, L'Oreal made various statements during the term of the contract that induced the purchase of more products on the expectation that L'Oreal would

---

promised to repurchase the unsold inventory whenever the contract ended.

7

repurchase the unsold inventory when the parties' relationship ended. Should a jury agree with Shakour, it could reasonably conclude that the parties modified the contract and that L'Oreal's refusal to repurchase the unsold goods justifies Shakour's decision both to withhold payment and to continue to market the goods. Under the circumstances, the motion of L'Oreal for summary judgment as to breach of contract will be denied.[5]

### B. Unjust Enrichment

Count 3 of the complaint alleges unjust enrichment. However, "[b]ecause unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (quotation omitted). That is surely the case here, as a detailed and specific contract is at the center of the parties' dispute. "The law will not imply a contract where there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956). Accordingly, plaintiff's motion for summary judgment on Count 3 will be denied.

### C. Chapter 93A

Count 5 of the complaint alleges a violation of Mass. Gen. L. ch. 93A. L'Oreal contends

---

[5] Shakour did not expressly argue equitable estoppel in its opposition to L'Oreal's motion for summary judgment. *See Leaf Funding, Inc. v. Brogan Pharms., Inc.*, 642 F. Supp. 2d 844, 852 (N.D. Ind. 2009) (finding that defendant's failure to assert defense in opposition to plaintiff's summary judgment motion constituted waiver). Although the Court in its discretion could deem Shakour to have waived the defense, it declines to do so here. Shakour invoked equitable estoppel as an affirmative defense in its answer, and the facts that underlie it are fully developed in the papers. Moreover, Shakour has asserted a counterclaim for misrepresentation, which focuses precisely on its contention that L'Oreal misrepresented its intention to repurchase the unsold inventory. Were the Court to grant summary judgment to L'Oreal on its breach of contract claim, a trial would still be required on the counterclaim. As a result, a finding that Shakour waived the equitable estoppel defense would not conserve substantial judicial resources. Under the circumstances presented here, the Court will not deem Shakour to have waived the defense.

that defendant engaged in unfair and deceptive trade practices by purchasing $423,815 worth of products without payment and by holding itself out as an authorized L'Oreal distributor after the parties' business relationship ended, the same two acts that breached the contract. In response, Shakour contends that the New York choice of law provision in the contract precludes L'Oreal from recovering under the Massachusetts statute. In any event, defendant argues that genuine issues of material fact render plaintiff's request for summary judgment premature. Although defendant's first point is incorrect, its second is well-taken.

In *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems. Co.*, the First Circuit held that a contractual choice-of-law provision that called for the application of California law precluded the plaintiff's Chapter 93A claims. 986 F.2d 607, 609-11 (1st Cir. 1993) (Breyer, J.). In that case, the plaintiff asserted Chapter 93A claims that were essentially duplicative of its breach of contract claims. *Id.* at 609. But the parties had agreed to a choice of law provision providing that the "Agreement and the *rights and obligations* of the parties hereto shall be governed by and construed in accordance with the laws of California." *Id.* at 609 (emphasis added). In using that language, the parties agreed to apply California law not only to breach of contract claims, but also to "contract related" claims—that is, those claims concerning the "rights and obligations" arising out of, or imposed by, the contract. As a result, the plaintiff could not assert Massachusetts Chapter 93A claims based on conduct governed by the contract. *Id.* at 609-10.

The choice of law provision in this case, by contrast, is not so broad. It provides merely that "*[t]his Agreement* shall be construed in accordance with and all disputes herein shall be governed by the internal laws of the State of New York . . . ." (Doc. 29-1, at 28, ¶ 24 (emphasis

9

added)). Thus, even though L'Oreal alleges that Shakour violated Chapter 93A in the same two ways it breached the contract, the choice of law provision does not require the exclusive application of New York law to all of defendant's conduct. *See Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 580 n.9 (1995) (distinguishing *Northeast Data* from cases in which the contract does not state that the rights of the parties are governed by the law of another state but only that the agreement is to be governed and construed by that law). Put simply, "[t]he choice of law clause [in this case] does not purport to bar the application of [Chapter] 93A to the parties' dealings in Massachusetts." *Id.*

Although the parties' choice of law provision does not bar L'Oreal's Chapter 93A claims, the Court nevertheless declines the resolve those claims at summary judgment. L'Oreal is correct that "[a] ruling that conduct violates [Chapter] 93A is a legal, not a factual, determination." *Incase, Inc. v. Timex Corp.*, 488 F.3d 46, 56 (1st Cir. 2007) (quotation omitted). Even so, the First Circuit has also explained that "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact." *Id.* at 57. Thus, liability under Chapter 93A depends upon antecedent factual findings, which the Court is unwilling and unable to make at this stage. As explained above, whether L'Oreal should be equitably estopped from invoking the bar on oral modification is still at issue. In turn, the Chapter 93A claims will depend to at least to some extent on a factual determination of whether L'Oreal misrepresented its intention to repurchase the unsold inventory. The resolution of those issues will have to await further developments.

**IV.    Conclusion**

For the foregoing reasons, L'Oreal USA Inc.'s motion for summary judgment is DENIED.
**So Ordered.**

                                    /s/ F. Dennis Saylor
                                    F. Dennis Saylor IV
                                    United States District Judge

Dated: September 7, 2010